**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

RUBEN ROSADO SOLANO, ET AL.,

    Plaintiffs,

        v.

FRANQUICIAS DE MARTIN'S BBQ,
INC.,

    Defendant.

**Civil No. 13-1083 (SEC)**

**OPINION AND ORDER**

    Before the Court are the defendant's motion to dismiss (Docket # 8), and the plaintiffs' opposition thereto. Docket # 13. After reviewing the filings and applicable law, the motion is **DENIED**.

    **Factual and Procedural Background**

    This putative trademark infringement and unfair competition action concerns a contractual dispute between family members over the right to use the mark "MARTÍN'S BBQ" (Martin's BBQ), a popular rotisserie-style-chicken restaurant in Puerto Rico. Invoking this court's federal-question jurisdiction, see 28 U.S.C. §§ 1331, 1338, the plaintiffs Rubén Rosado Solano and "Martín's Bar B. Q., Inc." (collectively, Plaintiffs), filed this suit under the Lanham Act, 15 U.S.C. §§ 1051-1129, against Franquicias de Martin's BBQ, Inc. (Defendant). The complaint also contains pendent state-law claims for breach of contract and damages.

    The well-pleaded facts in the complaint—extending every reasonable inference in Plaintiffs' favor, see Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir.1992)—are as follows.[1] In the early 1960s, Rosado-Solano's father, Martín Rosado-Ortiz, founded the first

---

    [1]When, as here, a defendant's subject-matter-jurisdiction challenge is based on the face of the complaint (also called a "facial attack on a complaint"), courts "merely . . . look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's]

Martin's BBQ-marked restaurant. It was located in the town of Bayamón, Puerto Rico, where Rosado-Ortiz later opened several other such restaurants. Docket # 1, ¶¶ 8, 10.

With Rosado-Ortiz's blessing, Rosado-Solano (and other family members) subsequently opened similar restaurants under the Martin's BBQ mark. Id. ¶11. After all, the complaint alleges, it was a family-run business. Id. So for several decades, Rosado-Solano and his family enjoyed "unrestricted authorization" to use and commercially exploit the name and brand Martin's BBQ that identified their establishments. Id. ¶12.

Fast-forward to 1997. Rosado-Solano incorporated co-plaintiff Martín's Bar B. Q., Inc.; he subsequently registered the trademark  Martin's BBQ with the Puerto Rico Department of State's Trademark Registry. Id. ¶¶ 13, 15. In the late 1990s, Rosado-Solano's sons and two of his nephews sought to expand the family business. The idea, the complaint explains, was to sell franchise rights to entrepreneurs outside the family circle to operate Martin's BBQ-marked restaurants. Id. ¶19. To that end, Franquicias BBQ was incorporated. Id. ¶20.

But, according to the complaint, since Plaintiffs had already registered the  Martin's BBQ mark, Franquicias BBQ "had to negotiate" with Plaintiffs in order to acquire the franchise rights. Id. ¶ 21. On January 20, 1999, Franquicias BBQ, and Martín's Bar B. Q., Inc. executed a contract (the Assignment Agreement) whereby  Martín's Bar B. Q., Inc. assigned Franquicias BBQ the rights to the Martin's BBQ "registered trademark and for its commercial exploitation." Id. ¶ 23. "On November 19, 2002, Franquicias de BBQ, Inc., registered the trademark Martin's BBQ at the United States Patent and Trademark Office. It has recently started proceedings to register the same with the Puerto Rico State Department's Registry of Trademarks." Id. ¶ 28.

In 2004, Héctor Raúl Rosado-Velázquez — one of Rosado-Solano's nephews — acquired  full control of Franquicias BBQ. See id. ¶ 35. And on July 15,  Rosado-Velázquez

---

complaint are taken as true for purposes of the motion." Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007).

incorporated Franquicias de Martín's BBQ, Inc. (the defendant), which, the complaint avers, became Franquicias BBQ's "successor in interest." Id. ¶ 36. According to the complaint, Defendant had to comply with the Assignment Agreement between Franquicias BBQ and Plaintiffs. Id. Allegedly, however, Defendant has repeatedly breached the Assignment Agreement. Id. ¶¶ 37-39, 47. The alleged breaches are irrelevant at this time.

On January 30, 2013, Plaintiffs notified Defendant that the Assignment Agreement "had been terminated as was its right to use the 'Martin's BBQ' trademark." Id. ¶ 48. According to the complaint, because Plaintiffs "are once again the exclusive and legitimate owners of the trademark 'Martin's BBQ,'" id. ¶ 49, Defendant has been required to immediately cease and desist from using the 'Martin's BBQ' trademark, its color patterns and other items related to the trademark." Id. ¶ 50. But Defendant has refused, and, to this day, allegedly "continues its unauthorized and illegal use [of] the 'Martin's BBQ' trademark and to operate its franchising business." Id. ¶ 51. This suit followed. Docket # 1.

Plaintiffs' complaint contains seven counts; the first two are the putative federal claims — to wit: "Unfair competition" (predicated on a false designation of origin under  15 U.S.C. § 1125(a)), and "willful trademark violation" under § 1117. Docket # 1, pp. 14, 18. The third count also contains claims of trademark infringement and unfair competition, albeit under Puerto Rico law, id., p. 19. The fourth count is a request for permanent injunction, id., p. 22, while the fifth is a request for "cancellation of federal trademark registration," id., p. 23. The last two are couched on state law: Declaratory-judgment relief, see 28 U.S.C. § 2201(a), "related to the resolution of the Assignment Agreement," id., p 24; see P.R. Laws Ann. tit. 31, § 3052, and a claim for damages under Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141, id., p. 27.

Defendant moves to dismiss for want of jurisdiction, see Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6).  The

complaint, Defendant charges, "bootstraps an otherwise ordinary state contract or damages case onto a purported Lanham Act trademark infringement claim." Docket # 8, p. 2. Plaintiffs timely opposed. Docket # 13.

**Standard of Review**

Rule 12(b)(1) is the appropriate vessel for challenging a court's subject-matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). In reviewing a motion to dismiss under this rule, the court construes the plaintiffs' allegations liberally and "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (internal quotation marks and citations omitted). Accordingly, courts are empowered to "[w]eigh the evidence and make factual determinations, if necessary, to determine whether it has jurisdiction to hear the case." Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 40 n. 8 (1st Cir. 2012) (citing Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007)). When faced with a jurisdictional challenge courts must credit the plaintiffs' well-pleaded factual averments and indulge every reasonable inference in the pleader's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin, 254 F.3d at 363). Nonetheless, it is beyond dispute that a plaintiff faced with a subject-matter jurisdiction challenge has the burden to demonstrate its existence. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citations omitted).

For its part, Rule 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. To avoid dismissal, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R .Civ. P. 8(a)(2). At the pleading stage, the plaintiffs need not demonstrate likelihood of success, but their claims "'must suggest more than a sheer possibility that a defendant  has acted unlawfully.'" Garcia-Catalan v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In other words, a plaintiff must allege "enough facts to state

a claim to relief that is plausible on its face," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). A claim has facial plausibility when a "complaint's non-conclusory factual content . . . [permits] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" <u>Gianfrancesco v. Town of Wrentham</u>, 712 F.3d 634, 639 (1st Cir. 2013) (quoting <u>Iqbal</u>, 556 U.S. at 663).

**Applicable Law and Analysis**

For cases, such as this one, where no diversity of citizenship exists between parties, "jurisdiction turns on whether the case falls within 'federal question' jurisdiction." <u>Ortiz-Bonilla v. Federación de Ajedrez de Puerto Rico, Inc.</u>, 734 F.3d 28, 34 (1st Cir. 2013). As noted, Defendant says that the claims asserted by Plaintiffs do not involve a federal question under the Lanham Act. Because its motion to dismiss is grounded on two different grounds — Rules 12(b)(1) and 12(b)(6) — the Court would normally consider the Rule 12(b)(1) challenge first. <u>See</u>, <u>e.g.</u>, <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 149 (1st Cir. 2002) ("When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted)). But where, as here, "both federal jurisdiction and the existence of a federal claim turn upon whether the complaint states a federal question, the preferable practice is to assume that jurisdiction exists and proceed to determine whether the claim passes muster under Rule 12(b)(6)." <u>Estate of Soler v. Rodríguez</u>, 63 F.3d 45, 47 n. 1 (1st Cir.1995).

The problem here, however, is that Defendant's motion to dismiss offers no developed legal discussion in support of its 12(b)(6) request, leaving the Court ill-equipped to tackle Plaintiffs' unanswered 23-page opposition, which rebuts Defendant's contentions.[2] The 12(b)(6)

---

[2]For example, Defendant's one-and-a-half page discussion regarding the claims of unfair competition under § 43(a) and "willful trademark violation" under the Lanham Act merely contains one (undiscussed) non-binding case, which correctly states that both claims "'are subject to the same legal standard—namely, 'likelihood of confusion.'" <u>Venture Tape Corp. v. McGills Glass Warehouse</u>, 540

request is, therefore, summarily **DENIED**, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (reiterating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), and the ensuing discussion is circumscribed to the only developed contention: The jurisdictional argument.

*Federal-Question Jurisdiction*

A well-trodden legal principle dictates that "federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine particular cases." Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013) (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998)). As relevant here, Congress has authorized the federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; see Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 13 (1st Cir. 2013), and, more specifically, over "any civil action arising under any Act of Congress relating to trademarks," § 1338(a).[3]

The Lanham Act similarly grants original jurisdiction to the district courts "of all actions arising under this chapter [Chapter 22: Trademarks], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C. §

F.3d 56, 61 n. 6 (1st Cir. 2008) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992)). But then, Defendant fails entirely to offer a developed legal discussion on this front. See, e.g., Rocafort v. IBM Corp., 334 F.3d 115, 122 (1st Cir.2003) ("Passing reference to legal phrases and case citation without developed argument is not sufficient to defeat waiver." (citing DiMarco–Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir.2001))); CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1526 (1st Cir.1996) (three sentences with three undiscussed citations did not defeat waiver).

[3]The Supreme Court recently reiterated that it has "interpreted the phrase 'arising under' in both sections identically, applying our § 1331 and § 1338(a) precedents interchangeably." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) (citing Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 808-809 (1988)).

1121(a). Both statutory provisions share a common denominator: They grant the federal courts jurisdiction — irrespective of the amount in controversy — of all actions "arising under" the Federal Lanham Trademark Act. But neither section creates any substantive legal right to assert in federal court — again, they merely confer jurisdiction. See 6 McCarthy on Trademarks and Unfair Competition § 32:2 (4th ed. updated December 2013). The Lanham Act, of course, contains the substantive federal legislation on trademarks. See, e.g., Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).

Now, a suit arising out of a contract involving a trademark does not automatically arise under an Act of Congress relating to trademarks. See International Armor & Limousine Co. v. Moloney Coachbuilders, Inc., 272 F.3d 912, 916 (7th Cir. 2001) (Easterbrook, J.); cf., e.g., Royal v. Leading Edge Products, Inc., 833 F.2d 1, 2 (1st Cir. 1987) ("It is settled beyond peradventure that an action does not 'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright." (citation omitted)). "Judge Friendly's famous opinion in T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir.1964), holds that controversies about contracts that allocate ownership of copyrights arise under the contract, not the copyright laws."Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc., 660 F.3d 281, 284 (7th Cir. 2011) (Posner, J.) (construing T.B. Harms). That approach, which has been adopted to trademarks, see, e.g., Int'l Armor & Limousine Co., 272 F.3d at 916, follows the so-called "face of the complaint" test established by Judge Friendly. See T.B. Harms, 339 F.2d at 828 (noting that a claim "arises under" the Copyright Act if, inter alia, it "asserts a claim requiring construction of the Act").

In cases like this one, however, "in which the plaintiff's claims sound in contract but also allege trademark infringement and seek remedies expressly granted by the Lanham Act, the district court has subject-matter jurisdiction pursuant to § 1338(a)." 13D Fed. Prac. & Proc. Juris. § 3582 (3d ed. Updated April 2013) (citing Ryan v. Volpone Stamp Co., Inc., 107 F.

Supp. 2d 369, 376 (S.D. N.Y. 2000)). In <u>Bassett v. Mashantucket Pequot Tribe</u>, 204 F.3d 343, 348 (2d Cir. 2000) (Leval, J.), the Second Circuit reaffirmed <u>T.B. Harms</u> and crafted a bright-line test, "focus[ing] on whether and how a complaint implicates the Copyright Act." <u>Id.</u> at 348. "[T]he analysis . . . turns on what is alleged on the face of the complaint." <u>Id.</u> at 349. This occurs when "(1) the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction; or (2) the complaint . . . asserts a claim requiring construction of the Act . . . ." <u>Id.</u> (internal quotation marks omitted).

"<u>Bassett</u> pointed out that if federal courts could not determine the state-law issues intertwined with a copyright suit, then the plaintiff would be forced to litigate exclusively in state court and would be deprived of the remedies Congress provided in the Copyright Act." <u>Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.</u>, 623 F.3d 61, 69 (2d Cir. 2010) (construing <u>Bassett</u>). As particularly relevant here, and as correctly noted by Plaintiffs, the Second Circuit recently extended <u>Bassett</u>'s approach to trademark litigation. The court explained:

> To adopt a contrary rule would leave plaintiffs who seek the remedies Congress created under the Lanham Act with two unappealing options. One option would force plaintiffs to engage in piecemeal litigation—first a state court proceeding to determine the question of ownership, and then a federal court proceeding under the Lanham Act. The other option would force plaintiffs to litigate all aspects of the case in state court, which would eliminate the choice between the state and federal fora that Congress offered litigants wishing to pursue claims arising under the Lanham Act.

<u>Id.</u> at 69-70. And the vast majority of Circuits have adopted that analytical approach — that is, the <u>T.B. Harms</u>/<u>Bassett</u> test. <u>See</u> <u>1mage Software, Inc. v. Reynolds & Reynolds Co.</u>, 459 F.3d 1044, 1051 (10th Cir. 2006) (collecting circuit case law). Recognizing <u>T.B. Harms</u>' persuasive value, the First Circuit has remarked that there, Judge Friendly established "[t]he most frequently cited test," <u>Royal</u>, 833 F.2d at 2, "to establish the <u>absence</u> of federal question jurisdiction . . . ." <u>Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.</u>, 510 F.3d 77, 96 n. 20 (1st Cir. 2007) (citation omitted).

Unfortunately, the First Circuit has "been reluctant to embrace the test as a reliable means to establish the <u>presence</u> of SFQ [substantial federal question] jurisdiction" <u>Id.</u> While neither party has identified the significance of this dictum, the Court finds that it is of no moment. The short of it is that "[a]n investigation into whether a cause of action asserts a 'substantial' federal question is relevant only for state-law causes of action containing embedded federal questions." <u>Ortiz-Bonilla</u>, 734 F.3d at 36. Here, however, Plaintiffs' alleged violations of the Lanham Act "constitute[ ] a 'direct federal question,'" <u>see id.</u> The <u>T.B. Harms/Bassett</u> rule applies here.

Applying the <u>T.B. Harms/Bassett</u> test to the complaint, the Court finds that it properly invokes federal jurisdiction. Plaintiffs specifically allege trademark infringement, false designation of origin, and seek cancellation of marks, all under the Lanham Act. <u>See</u> 15 U.S.C. §§ 1117, 1119, 1125(a), 1125(c). They also request remedies provided for by the Lanham Act: Treble damages, costs, attorney's fees, permanent injunctive relief, and cancellation of the Martin's BBQ mark. <u>See</u> 15 U.S.C. §§ 1116, 1117(b), 1119. Consequently, Plaintiffs have pled claims arising under the Lanham Act. <u>Accord</u> <u>Fed. Treasury Enter. Sojuzplodoimport</u>, 623 F.3d at 71.

This conclusion is not upended by the fact that, before reaching Plaintiffs' Lanham Act claims, the Court will have to delve into state law to test Plaintiff's curious legal theory: Whether or not the alleged breaches of the Assignment Agreement — and the concomitant issue of the validity and consequences of its "resolution" under Article 1077 of the Civil Code, P.R. Laws Ann. tit. 31, § 3052 — led to a "reversion" of the assigned rights such that ownership of the mark reverted to Plaintiffs. <u>See</u> <u>Mercado-Salinas v. Bart Enterprises Int'l, Ltd.</u>, 852 F. Supp. 2d 208, 218 (D.P.R.), <u>on reconsideration in part</u>, 889 F. Supp. 2d 265 (D.P.R. 2012).[4] "Although

---

[4] Defendant's motion to dismiss nowhere contests this vital legal question (i.e., the issue of ownership), whose resolution is an antecedent question to the alleged Lanham Act violations. <u>See</u>

**CIVIL NO. 13-1083**                                                                          **Page 10**

this court may be required to make a preliminary determination that the rights to the trademarks have reverted to plaintiff under the license agreement, the necessity for that determination does not defeat federal jurisdiction." Foxrun Workshop, Ltd. v. Klone Mfg., Inc., 686 F.Supp. 86, 90 (S.D.N.Y.1988) (Leval, J.); accord Fed. Treasury Enter. Sojuzplodoimport, 623 F.3d at 71 (holding that "federal question jurisdiction exists not only over the infringement claims but also over the antecedent issue of the validity of the assignment, an issue whose resolution may depend on state . . . law").

### Conclusion

For the reasons stated, Defendant's motion to dismiss is **DENIED**.

### IT IS SO ORDERED

In San Juan, Puerto Rico, this 8th day of January, 2014.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

Health & Body Store, LLC v. Justbrand Ltd., 480 F. App'x 136, 145 (3d Cir. 2012) ("In order to succeed on a false designation of origin or unfair competition claim under the Lanham Act, a plaintiff must prove . . . [the plaintiff] owns the mark . . . ." (citation omitted)); Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 259-60 (2d Cir.2005) (noting that ownership of the relevant trademark is one of the "necessary elements . . . of trademark infringement under the Lanham Act"). The Court expects a developed discussion of this issue next time around.